Steven Ray BRUMLEY, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 884S309.

Supreme Court of Indiana.

May 13, 1986.

William L. Soards, Soards & Carroll, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

Defendant-Appellant Steven Ray Brumley was originally charged with conspiracy to commit murder, I.C. § 35–41–5–2, and murder, I.C. § 35–42–1–1. The conspiracy count was subsequently dismissed, jury trial held, and defendant was convicted of attempted murder, I.C. § 35–41–5–1. He was sentenced to a term of twenty (20) years imprisonment.

This direct appeal raises the following three issues:

1. whether the trial court erred in refusing to declare a mistrial after a juror

was overcome and replaced by the alternate juror;

2. whether the trial court erred in denying Brumley's motion for a continuance due to absent witnesses; and,

3. whether the evidence was sufficient to sustain the verdict.

We affirm.

Lawrence Coffee died from wounds received in a scuffle involving James Sutt, Mike Stone and Defendant Brumley. Stone's estranged wife had begun living with her former husband, Coffee. About 10:00 p.m. on the evening of June 22, 1983, defendant and Sutt accompanied Stone, who intended to provoke a confrontation with Coffee. Defendant and Sutt were armed with knives. The men arrived at the residence of Stone's wife and cut the telephone wires leading to the house. Aware that their presence had been observed, Stone, Sutt and defendant departed. Shortly thereafter, after having left Stone briefly, defendant and Sutt discovered Stone and Coffee fighting. Defendant and Sutt drew their knives to "run off" a group of boys. Upon detecting the presence of defendant and Sutt, Coffee started to run away, at which time the defendant swung his knife at Coffee's back, cutting him. In the course of the fracas, Sutt stabbed Coffee in the chest and abdomen. Coffee attempted to run away, but slipped and fell. Defendant pursued Coffee and struck him in the head with a can of beer. Coffee was later hospitalized and subsequently died as a result of blood loss from wounds in the chest and abdomen, and not as a result of any of the knife wounds inflicted in his back.

### ISSUE I

Defendant contends that the trial court erred in refusing to declare a mistrial after a juror was overcome upon seeing photographs of Coffee's body taken during the autopsy. The trial judge excused the juror and impaneled the alternate. Defense counsel moved for a mistrial, claiming the incident so prejudiced the jury that defendant could no longer receive a fair trial.

The trial judge then inquired of the jury panel whether any of them felt that they could not fairly evaluate the evidence in light of the incident. None responded. The judge then offered defense counsel the opportunity to examine the jurors individually, but she declined. Brumley now argues that a mistrial should have been declared. We disagree.

The declaration of a mistrial is an extreme action, warranted only when no other measure will protect the defendant's substantial rights. *Gambill v. State* (1982), Ind., 436 N.E.2d 301, 304. In a similar situation reviewed in *Cardine v. State* (1985), Ind., 475 N.E.2d 696, a juror had reacted strongly to photographs of a homicide victim, but the trial judge refused to specifically question the juror about his ability to remain fair after viewing them. Upholding this decision Justice DeBruler wrote:

[T]he trial court is in the best position to determine whether the jury was improperly influenced by the evidence. Moreover, the trial court instructed the jury to set aside all sympathy and sentiment in reaching its verdict. There is nothing in the record related to this claim that would warrant disturbing the trial court's decision not to voir dire juror number one.

475 N.E.2d at 699. In an analogous context, our courts have upheld decisions by trial judges faced with a claim of prejudicial publicity occurring during a trial to examine the panel and continue the trial after being satisfied that the jurors had not been exposed to the publicity or were not affected by it. *E.g., Leavell v. State* (1983), Ind., 455 N.E.2d 1110, 1116–17; *Cunningham v. State* (1984), Ind.App., 469 N.E.2d 1, 4–5, *trans. denied.*

We conclude that the trial court took appropriate ameliorative measures in this case by asking the panel whether they had been affected by the reaction and replacement of their fellow juror, and by allowing counsel the opportunity to ques-

tion the jurors individually. We find no error in the refusal to declare a mistrial.

## ISSUE II

■ Defendant next contends that the trial court erred in refusing to grant him a continuance, at the close of the State's case-in-chief, to locate and call two witnesses. These witnesses had been subpoenaed by the State, but the prosecution did not call them, and they were not present. The parties had told the court at the pretrial conference the previous week that they were ready to proceed to trial. Brumley had not subpoenaed these witnesses. We find no error.

I.C. § 35–36–7–1(a) through (d) provides:

(a) A motion by a defendant to postpone a trial because of the absence of evidence may be made only on affidavit showing:

(1) that the evidence is material;

(2) that due diligence has been used to obtain the evidence; and

(3) the location of the evidence.

(b) If a defendant's motion to postpone is because of the absence of a witness, the affidavit required under subsection (a) must:

(1) show the name and address of the witness, if known;

(2) indicate the probability of procuring the witness's testimony within a reasonable time;

(3) show that the absence of the witness has not be procured by the act of the defendant;

(4) state the facts to which the defendant believes the witness will testify, and include a statement that the defendant believes these facts to be true; and

(5) state that the defendant is unable to prove the facts specified in accordance with subdivision (4) through the use of any other witness whose testimony can be as readily procured.

(c) The trial may not be postponed if:

(1) after a motion by the defendant to postpone because of the absence of a witness, the prosecuting attorney admits that the absent witness would testify to the facts as alleged by the defendant in his affidavit in accordance with subsection (b)(4); or

(2) after a motion by the defendant to postpone because of the absence of written of documentary evidence, the prosecuting attorney admits that the written or documentary evidence exists.

(d) A defendant must file an affidavit for a continuance not later than five (5) days before the date set for trial. If a defendant fails to file an affidavit by this time, then he must establish, to the satisfaction of the court, that he is not at fault for failing to file the affidavit at an earlier date.

Even if the circumstances are found sufficient to excuse the requirement of written affidavit, the trial court's denial of the continuance was proper by reason of the substance of the requirements of (a)(2), (b)(4), and (b)(5). Having failed to subpoena the absent witnesses, defendant could not show due diligence. Further, the substance of the testimony sought to be elicited from the missing witnesses, regarding the actual presence of the defendant at the moment Sutt inflicted stab wounds to the victim's chest and abdomen, is not material to defendant's conviction for attempted murder. Defendant does not contend that the witnesses would have provided any evidence tending to disprove that defendant struck at Coffee's back with his knife, or that he hit him in the head with a can of beer. In fact, this conduct was admitted by the defendant.

■ Counsel for defendant also suggested that the motion to continue was alternatively based on nonstatutory grounds. To the extent the motion was based on such grounds, it was subject to the trial court's discretion, which will be reversed only on a showing of manifest abuse. *Rhinehardt v. State* (1985), Ind., 477 N.E.2d 89, 92.

We find no error in the trial court's refusal to grant the motion for continuance.

## ISSUE III

Defendant finally contends that the evidence was not sufficient to sustain the verdict. Specifically, he argues that the evidence did not prove his legal intent to kill Coffee, and that therefore he was at most guilty of battery. Our test for sufficiency of the evidence requires that we look only to the probative evidence and the reasonable inferences therefrom which support the verdict, to determine whether a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. If so, we will affirm the conviction. *Case v. State* (1984), Ind., 458 N.E.2d 223; *Loyd v. State* (1980), 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

As defined by Ind. Code 35–41–5–1, an attempt crime is committed when the defendant, acting with the requisite legal intent to commit the underlying crime, here murder, takes a "substantial step" toward the commission of that crime. *See, Woodford v. State* (1986), Ind., 488 N.E.2d 1121, 1123–24 and authorities cited. Defendant asserts that proof of the required intent is lacking, and thus he was at most guilty of battery.

 Under Ind. Code § 35–42–1–1 a person commits murder if he knowingly *or* intentionally kills the victim. Ind. Code 35–41–2–2 provides in pertinent part:

(a) A person engages in conduct "intentionally" if, when he engages in the conduct, it is his conscious objective to do so.
(b) A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so.

In *Case, supra,* we stated:

To "knowingly" kill is to inflict an injury upon another person resulting in his death, at the time being aware of a high probability that one is doing so. By its very nature a state of mind is not objectively discernible and may only be inferred or deduced from voluntary verbal and physical conduct and surrounding circumstances. [Citations omitted.]

458 N.E.2d at 226–227. The necessary intent to commit murder may be inferred from the intentional use of a deadly weapon in a manner likely to cause death. *Zickefoose v. State* (1979), 270 Ind. 618, 388 N.E.2d 507; *Scott v. State* (1980), 247 Ind. 687, 413 N.E.2d 902; *Johnson v. State* (1983), Ind., 455 N.E.2d 932. It is well established that, dependent upon the circumstances, the intent to murder may occur as instantaneously as successive thoughts. *Clay v. State* (1982), Ind., 440 N.E.2d 466, 470.

Defendant was armed with a knife when he and others accompanied their friend Stone who intended to "have it out" with Coffee. The men cut the telephone lines leading to the house where Coffee was staying. When the anticipated fight between Stone and Coffee finally occurred, defendant pulled his knife to frighten away a group of boys partisan to Coffee, and defendant then went to the fight scene to help Stone. As Coffee was trying to run away, defendant swung his knife at Coffee, inflicting a wound 6½ inches long on the victim's back. Defendant then pursued Coffee who fell while trying to run away. As the defendant approached, Coffee apparently tried to kick at defendant, whereupon the defendant struck Coffee in the head with a can of beer. As is the case here, when there is substantial evidence of probative value from which the trial court could find or infer that all of the elements of the crime were proved beyond a reasonable doubt, the conviction will not be set aside. *Johnson v. State, supra; Poindexter v. State* (1978), 268 Ind. 167, 374 N.E.2d 509.

The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK and SHEPARD, JJ., concur.